ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

KATHERINE L. WAWRZYNIAK (CABN 252751)
Acting Chief, Criminal Division

ABRAHAM FINE (CABN 292647)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3717
    FAX: (510) 637-3724
    Abraham.Fine@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>WILLIAM MULLIGAN,<br><br>    Defendant. | CASE NO. 21-CR-0200-YGR<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Date:   June 1, 2023<br>Time:  8:30 a.m.<br>Court:  Honorable Yvonne Gonzalez Rogers |

# INTRODUCTION

After a four-day trial, the jury convicted Defendant William Mulligan of two counts of bank robbery and two counts of attempted bank robbery that all occurred in January of 2021. These were hardly the first crimes Defendant has committed. In fact, Defendant was released from his latest stint in federal prison in August of 2020—he had been out of custody less than five months before being arrested with a loaded firearm and the robbery note still in his wallet. Before that, Defendant sustained two federal convictions for firearms related offenses, numerous Form 12 violations, and a significant state court criminal history, including convictions for armed robbery and assault.

No doubt, Defendant suffered an incredibly difficult upbringing. The adversity that accompanies being born to a 12-year-old mother and being sexually assaulted as a child is hard to imagine. But the safety of the community is paramount. Defendant is a danger to the community and whenever he is ultimately released, he is likely to offend again.

For the reasons set forth below, the government recommends that the Court sentence Defendant to a mid-range Guidelines sentence of 120 months imprisonment, a three-year term of supervised release (with the conditions recommended by probation), a mandatory $400 special assessment, and order restitution in the amount of $8,650 to Bank of America and $1,160 to Wells Fargo.

# BACKGROUND

## I. Offense Conduct

The evidence presented at trial showed that Defendant committed two bank robberies and two attempted bank robberies in January of 2021. On January 11, 2021, Defendant entered a Bank of America branch in Dublin, California. *See* Presentence Investigation Report ("PSR") ¶ 6. He approached the teller and presented a note that said something to the effect of "This is robbery. Give 100s and 50s." Reporter's Transcript of Trial Proceedings ("Tr.") Vol. 2 at 240:5-6. Upon seeing the note, the teller's "heart dropped" and he "was panicked." *Id*. at 240:8. He then handed Defendant $8,650 in cash, which was all of the 100s and 50s the teller had at his station. *Id*. at 240:23-241:2. After Defendant walked out of the bank, the teller "hit [his] alarm, and [he] went to go look for [his] managers, notified them that [he] got robbed." *Id*. at 241:4-6.

On January 25, 2021, Defendant attempted to rob three banks. First, he entered a Bank of

America branch in Pleasant Hill, California, and presented a note to the teller which said something to the effect of "This is a robbery. Give me your 100s and 50s." *Id*. at 289:21-22. The teller "wasn't expecting it," and then said "no, I don't think so." *Id*. at 290:2-3. Defendant then left the bank "slowly and calmly," after which the teller tried to set off an alarm and notified her manager. *Id*. at 290:5-6.

Twenty minutes after the attempted Pleasant Hill robbery, Defendant entered a Bank of America branch in Walnut Creek, California. He approached the teller and presented a note that said something to the effect of, "You are robbed. Give me cash, 100s, 50s." *Id*. at 318:2; 318:7. Upon seeing the note, the teller was "shocked" and testified that her "mind was not even working at that time." *Id*. at 317:17-23. The teller then locked her station, walked away, and told a neighboring teller to press the security button. *Id*. at 319:23-24; 320:7-19. After Defendant left the bank, the teller told her manager and "let everyone know that she was robbed," after which the bank remained closed for the rest of the day. *Id*. at 326:17-23.

Shortly after the attempted Walnut Creek robbery, Defendant entered a Wells Fargo branch in Concord, California. Defendant approached the teller and presented a note that said something to the effect of "this was a robbery and to give him all the 100s." Tr. Vol. 2 at 351:18-19; 352:5-8. There was also "a little bit of a scribble" at the bottom of the note. *Id*. at 352:12. Upon seeing the note, the teller was "in shock." *Id*. at 352:24. The teller then handed Defendant all of the 100s in her till, which was only four or five, to which Defendant responded "that's all?" *Id*. at 353:7-14. At that point, the teller "really started to get scared." *Id*. at 353:14-15. The teller then "went to [her] 20s because [she] just wanted him to be satisfied and leave [her] alone." *Id*. at 353:21-22. In total, the teller gave Defendant $1,160. *Id*. at 354:1-2. After Defendant left the bank, the teller "pushed the emergency button and told [her] boss [she] had been robbed." *Id*. at 356:1-3.

On January 28, 2021, Novato Police pulled over Defendant's car because it had no license plates. PSR ¶ 11. Upon running Defendant's information, officers learned that Defendant had active warrants out for his arrest. *Id*. Upon searching Defendant, officers found loose ammunition, a 4.5-inch switchblade knife, a bag of marijuana, and the bank robbery note in his wallet. In Defendant's car, officers found a loaded firearm matching the caliber of the bullets found in his pocket.

## II.     Defendant's Criminal History

Defendant, who is 36 years old, has a criminal history containing many arrests, convictions, and supervised release violations. In 2006, Defendant was convicted of burglarizing a sporting goods store, stealing 51 firearms, and attempting to sell those firearms on the black market, in violation of 18 U.S.C. § 922(u). *See* Case No. 06-CR-0329-JSW. For that conviction, Defendant was sentenced to 27 months in custody. PSR ¶ 55.

In 2009, while on supervised release for the 2006 conviction, Defendant committed an armed robbery, during which he yielded a firearm and demanded money from store clerks. *Id*. at ¶ 57. Defendant was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), and sentenced to 63 months in custody, to run consecutive to a 24-month sentence on the supervised release violation from the 2006 case. *See* Case No. 09-CR-0634-JSW. Defendant also received a three-year state sentence for the armed robbery and subsequently received a six-month sentence for assault by a prisoner while her was incarcerated. *Id*. at ¶¶ 57-58.

Defendant was released from his federal sentence in December of 2015, and almost immediately began violating the terms of his supervised release. At first, Defendant's violations included drug and alcohol use, for which he was sentenced to three additional months in custody. *See* Case No. 09-CR-0634-JSW, Dkt. No. 43. Defendant then absconded from the New Bridge program, his supervised release was revoked, and he was sentenced to an additional six months in custody. *Id*. at Dkt. No. 62.

After release on that violation, Defendant continued to violate the terms of his supervised release in 2018 and 2019. Additional Form 12s charged him with testing positive for drugs, attempting to fake drug test results by using a whizzinator (a prosthetic penis and urine delivery device), and absconding from the halfway house. *Id*. at Dkt. No. 75. That Form 12 also charged Defendant with committing domestic battery against his girlfriend, alleging that he "slapped the shit out of her," "choked her," and told her he was going to "come back and kill her." *Id*. Defendant subsequently admitted to the first three charges in that Form 12 (he did not admit to the domestic violence charge, which the government dismissed), and the Court sentenced Defendant to 18 additional months in custody. Defendant was release from federal custody in August of 2020 and began robbing banks less than five months later.

UNITED STATES' SENTENCING MEMORANDUM    4
21-CR-0200-YGR

# ARGUMENT

## I. Legal Standard

The United States Sentencing Guidelines serve as "the starting point and initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court is to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991. In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), to include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

## II. Sentencing Guidelines Calculation

As set forth in the PSR, the government agrees with the Probation Department's Sentencing Guidelines Calculation. The government agrees that the base offense level for each of the four counts is 20, and that a +2 enhancement applies because the property of a financial institution was taken. PSR ¶¶ 17-40. Furthermore, pursuant to USSG §3D1.4, a +4 enhancement applies based on the grouping of the four counts, resulting in a total offense level of 26. *Id*. ¶¶ 41-47. The Probation Officer concluded that Defendant's criminal history score is 11, and he therefore falls into Criminal History Category V, resulting in a Guidelines range of 110-137 months. *Id*. ¶¶ 59-60, 98. The Probation Officer recommends an 84-month sentence. *Id*. at Sentencing Recommendation.

## III. The United States' Sentencing Recommendation

The United States recommends that the Court sentence Defendant to 120 months imprisonment, which is within the applicable Guidelines range. Defendant has been committing crimes for his entire adult life. As demonstrated by his long criminal history and repeated supervised release violations,

Defendant continues to break the law whenever out of custody. In this case, less than five months after his most recent release from federal prison, he robbed several banks and had a loaded firearm in his car. Given Defendant's the likelihood of recidivism upon release, incapacitation is the driving factor behind the government's sentencing recommendation.

Specific deterrence also factors into the government's sentencing recommendation, as shorter prison sentences have not had a deterrent effect on Defendant. As set forth above, Defendant received a 27-month sentence in 2006. In 2009, Defendant received a 63-month sentence to be served consecutive to a 24-month sentence on the Form 12 violation—essentially an 87-month sentence. Neither of these lengthy sentences deterred Defendant from committing more crimes. When released in 2015, Defendant committed a raft of Form 12 violations, receiving sentences of three months, six months, and finally 18 months in custody. And when released from that, Defendant engaged in the conduct that gave rise to this case—robbing several banks and possessing a loaded firearm. As such, only a significant prison sentence—more than the 87-month sentence Defendant previously received—has any chance of serving as a deterrent to Defendant committing more crimes.

Moreover, a significant custodial sentence is appropriate in this case to reflect the seriousness of Defendant's crimes. While Bank of America and Wells Fargo lost money as a result of Defendant's offenses, the real victims are the bank tellers who Defendant intimidated with his robbery notes. As set forth in the victim impact statement from the Wells Fargo bank teller, Defendant's robbery has continued to have a significant effect on her life. As she states, "[t]he trauma that has come from the Mulligan robbery has been debilitating" and has had significant psychological repercussions. The harm caused by Defendant's crimes goes well beyond the loss of a few thousand dollars to a couple of banks.

As set forth in the PSR, the government agrees that Defendant had a very difficult upbringing and the Court should certainly take that factor into consideration. But that difficult upbringing has been a factor since Defendant was sentenced as a 19-year-old in 2006. Despite being 36-years-old, Defendant has not aged out of dangerous criminal activity. And the government respectfully contends that the interests of deterrence and the safety of the community should drive the sentence in this case. Accordingly, the government submits a Guidelines sentence is appropriate here.

# CONCLUSION

For the foregoing reasons, the government recommends that the Court sentence Defendant to a mid-range Guidelines sentence of 120 months imprisonment, a three-year term of supervised release (with the conditions recommended by probation), a $400 special assessment, and order restitution in the amount of $8,650 to Bank of America and $1,160 to Wells Fargo.

DATED: May 25, 2023                                    Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

_____/s/_____
ABRAHAM FINE
BENJAMIN K. KLEINMAN
Assistant United States Attorneys